ALLYN & FORTUNA LLP
Nicholas Fortuna, Esq. (NF-9191)
Attorneys for Defendant
*MEL BERNIE and COMPANY, INC.*
200 Madison Avenue, 5th Floor
New York, New York 10016
Ph: (212) 213-8844
Fax: (212) 213-3318


WEISSMANN WOLFF BERGMAN
 COLEMAN GRODIN & EVALL LLP
Marvin Gelfand, Esq. (Admitted *Pro Hac Vice*)
Attorneys for Defendant
*MEL BERNIE and COMPANY, INC.*
9665 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212
Ph: (310) 858-7888
Fax: (310) 550-7191


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
CIRCA, INC.,

                Plaintiff,

            v.

MEL BERNIE and COMPANY, INC.,




                Defendant.
-----------------------------------------------------------X

CASE NO.: 07 CV 10265

NOTICE OF MOTION AND
MOTION OF DEFENDANT MEL
BERNIE AND COMPANY, INC.
TO TRANSFER VENUE TO THE
CENTRAL DISTRICT OF
CALIFORNIA; SUPPORTING
DECLARTIONS OF MEL BERNIE
AND MARVIN GELFAND

[28 U.S.C. § 1404 (a)]

Complaint filed: Nov. 13, 2007

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on a date to be set, if at all, by the above entitled court, defendant Mel Bernie and Company, Inc. will and hereby does move to transfer this action to the

Central District of California for convenience of parties and witnesses under 28 U.S.C. § 1404(a).

This motion is made on the ground that for convenience of the parties and witnesses and in the interests of justice this action should proceed in the Central District of California. This motion is based on this Notice, the accompanying Memorandum of Points and Authorities and supporting Declarations of Mel Bernie and Marvin Gelfand, Esq., the papers, records and pleadings on file in this matter, and any further argument or evidence that may be presented by counsel at or before the hearing, if any.

DATED:     January 28, 2008

ALLYN & FORTUNA LLP
Nicholas Fortuna, Esq. (NF-9191)
Attorneys for Defendant
*MEL BERNIE and COMPANY, INC.*
200 Madison Avenue, 5th Floor
New York, New York  10016
Ph:  (212) 213-8844
Fax:  (212) 213-3318\

and

WEISSMANN WOLFF BERGMAN
COLEMAN GRODIN & EVALL  LLP
Marvin Gelfand, Esq. (Admitted *Pro Hac Vice*)
Attorneys for Defendant
*MEL BERNIE and COMPANY, INC.*
9665 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212
Ph:  (310) 858-7888
Fax:  (310) 550-7191

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff filed in this district the instant declaratory relief action for "non-infringement" of the trademarks of defendant Mel Bernie and Company, Inc. ("MBC") in a conspicuous and disingenuous attempt to evade potential liability under the state laws of California for trademark infringement and unfair competition and because of its presumable preference to litigate in New York. However, because MBC's business headquarters, operations and employees are localized in the Central District of California and because plaintiff is a national company with locations across the country and which engages in promotional and other business activities in the Central District of California, the center of gravity of the litigation and the balance of convenience to the parties and witnesses tips strongly in favor of transferring this action to that district. Moreover, the totality of the circumstances and interests of justice further demand that plaintiff's attempt to forum shop by initiating the suit in this district not be rewarded.

### II.   STATEMENT OF PERTINENT FACTS

MBC manufactures costume jewelry which it sells to various distributors and retailers throughout the United States. MBC is a California corporation with its corporate headquarters and principal place of business in Burbank, California. All of MBC's principals and employees are located in Burbank, California, as are its warehouse and all of its corporate records. All of MBC's manufacturing is performed either in Burbank, California or abroad.[1]

One of MBC's prominent lines of jewelry is called "CIRCA 1900." On or about October 22, 1991, MBC adopted and began using the trademarks "CIRCA" and "CIRCA 1900," and the design mark "CIRCA 1900," in connection with its CIRCA 1900 line of jewelry. The CIRCA 1900 design mark and trademark, and the CIRCA trademark shall be referred to collectively herein as the "CIRCA trademarks." MBC has, since 1991, used the CIRCA trademarks in

---

[1] *See* Declaration of Mel Bernie ("Bernie Decl.") at ¶ 3.

interstate commerce in connection with its distribution and sales of the CIRCA 1900 line of jewelry.[2]

MBC is the owner of Registration No. 2833617 for the trademark "CIRCA," registered in the United States Patent and Trademark Office on April 20, 2004 covering use of that mark on costume jewelry with semi-precious and synthetic stones, silver jewelry, gold jewelry and watches.[3] MBC has, since 1991, developed the CIRCA trademarks and has continuously used them to distinguish the jewelry manufactured and sold by MBC from that manufactured and sold by others. The CIRCA trademarks have appeared prominently on MBC's products and in trade literature and advertising materials. MBC has diligently policed its rights in the CIRCA trademarks.[4]

Long after MBC's adoption and many years of continuous use of the CIRCA trademarks in connection with jewelry, and with actual and constructive notice thereof, plaintiff adopted and began using the name CIRCA in connection with its solicitation of and sales to jewelry customers. In or about January 2007, it came to the attention of MBC that plaintiff was advertising its jewelry related goods and/or services under the name "CIRCA" in certain jewelry trade magazines distributed in California. The advertisements prominently displayed the word "CIRCA" in a manner similar to the display of the word "CIRCA" on MBC's products and promotional materials, and state that plaintiff maintains one of its offices in San Francisco, California.[5]

Subsequently, MBC discovered that without obtaining MBC's permission, plaintiff had created and registered the domain name circajewels.com, and had been conducting business on that website and using the name "CIRCA" in connection with its purchase and sale of jewelry

---

[2] *See* Bernie Decl. at ¶ 4.

[3] *See* Bernie Decl. at ¶ 5.

[4] *See* Bernie Decl. at ¶ 6.

[5] *See* Bernie Decl. at ¶ 7.

4

related goods.[6] The circajewels.com website states that plaintiff is a national company and a national buying house, and identifies offices and regional directors in cities across the U.S. -- including San Francisco -- and abroad. It further states that plaintiff has plans to open offices in, among other cities, Los Angeles, and that its services are "not exclusive to [its] regional office areas."[7]

Accordingly, on January 29, 2007, MBC, through counsel, contacted plaintiff by letter sent via certified mail and demanded that plaintiff cease conducting the above-mentioned unlawful activity. On March 21, 2007, MBC, through counsel, again contacted plaintiff by letter sent via U.S. Mail regarding the above-mentioned unlawful activity. Plaintiff's counsel then contacted MBC's counsel and advised that it would investigate the nature of MBC's claims and provide MBC with a further response. On May 31, 2007, plaintiff, through counsel, responded by letter sent via first class mail to MBC, stating that plaintiff had found "no use of the marks as claimed." On August 9, 2007, after being advised by MBC that plaintiff was still publishing advertisements using the name CIRCA notwithstanding plaintiff's counsel's earlier representation, MBC, through counsel, sent via facsimile a letter to plaintiff's counsel setting forth MBC's use of the CIRCA trademarks and demanding again that plaintiff cease use of the circajewels.com domain name and the CIRCA trademark.[8]

On September 18, 2007, plaintiff's counsel responded by letter, cryptically stating that it was "continuing [its] review of the references provided in [MBC's counsel's] letter," that it "expected to respond [once] this process [was] completed," but that it could not give a precise reply date due to its reliance on "receiving information from third parties."[9] On or about September 25, 2007, MBC's counsel responded to plaintiff's counsel by letter stating that

---

[6] See Bernie Decl. at ¶ 8.

[7] See Bernie Decl. at ¶ 9.

[8] See Declaration of Marvin Gelfand ("Gelfand Decl.") at ¶ 2.

[9] See Gelfand Decl. at ¶ 3.

plaintiff did not seem to appreciate the gravity of the situation, and that, therefore, MBC would proceed to file an action for infringement against plaintiff.[10]

MBC's counsel was immediately contacted by plaintiff's counsel, and over the course of the next several weeks, MBC's counsel had discussions with plaintiff's counsel toward settlement of the claims, including potential business solutions. MBC's counsel agreed to refrain from filing a lawsuit pending discussions of potential resolution. While such discussions were pending, plaintiff filed the instant action in this district.[11]

### III. THIS ACTION SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought. *Freeman v. Hoffmann-La Roche Inc.*, 2007 U.S. Dist. LEXIS 23132, *4 (2007); 28 U.S.C. § 1404(a). The interests of justice require that the court not award forum shopping. *Id.* at *5. The "core determination under § 1404(a) is the center of gravity of the litigation." *Id.*

#### A. Venue Is Proper In the Central District of California

The threshold question in a transfer motion under Section 1404(a) is whether the action could have been brought in the district to which transfer is proposed. *Id.* at *5-6. This action could have been brought in the Central District of California ("Central District") because a substantial part of the events or omissions giving rise to the claims in this action -- namely, MBC's use and registration of the CIRCA trademarks in connection with its business and plaintiff's use of the CIRCA trademark in connection with the conduct and promotion of its business -- occurred there. 28 U.S.C. § 1391(b).

---

[10] *See* Gelfand Decl. at ¶ 4.

[11] *See* Gelfand Decl. at ¶ 5.

**B.     Convenience Of The Parties And Witnesses And The Interest of Justice Warrant A Transfer**

The decision whether to grant a motion to transfer venue requires a balancing of the conveniences, which is left to the sound discretion of the district court. *The Ritz Hotel, Limited v. Shen Manufacturing Company, Inc.*, 384 F.Supp.2d 678, 683 (S.D.N.Y. 2005). The balancing of the conveniences here weighs strongly in favor of transfer to the Central District.

(1) **Plaintiff's choice of forum.** While a plaintiff's choice of forum is generally entitled to substantial weight, that choice is accorded less deference when, as here, "the action is one for declaratory judgment in which plaintiff's posture before the court is more akin to a defendant than an ordinary plaintiff seeking relief." *Id.* at 683-84. In *Ritz Hotel*, this factor weighed in favor of defendant in plaintiff's declaratory relief action for "non-infringement" of defendant's trademarks, and defendant's motion to transfer was granted. *See also Societe Generale v. Fla. Health Scis. Ctr. Inc.*, 2003 U.S. Dist. LEXIS 21502, *24 (S.D.N.Y. 2003) (A plaintiff's choice of forum should carry less weight in a declaratory judgment action: a plaintiff brings such an action because it has perceived a threat of suit; therefore, its posture before the court is more akin to a defendant than an ordinary plaintiff seeking relief). It is undisputed that plaintiff has initiated the instant action for "non-infringement" based on its perceived threat of suit – in spite of apparently ongoing settlement discussions between the parties. Accordingly, plaintiff's position is akin to that of a defendant and its choice of forum therefore is entitled to little, if any, weight.

(2) **Location of Events Giving Rise to the Suit.** The balance of this factor tips more strongly in favor of transfer because the Central District is the location of substantial events giving rise to this suit: MBC conducts its business there; both parties engage in extensive promotion and advertising of their businesses there; and plaintiff conducts its business over the internet there.[12]

---

[12] *See* Bernie Decl. at ¶ 2, 6, 8.

(3) **Convenience of the Parties.** This factor similarly weighs much more strongly in favor of transfer to the Central District. The Central District is a far more convenient forum for MBC because MBC is a California corporation with its principal place of business, corporate headquarters and all of its U.S. operations localized there.[13] Although arguably not quite as convenient as it is to MBC, the Central District is convenient for plaintiff as well given plaintiff's national operation of its business and its work outside of its regional office areas. Indeed, plaintiff is a self proclaimed "national buying house," and its website lists "locations" all over the country, including one in California. Further, it advertises its plans to expand to open an office in Los Angeles.[14] Accordingly, the Central District would not be inconvenient for plaintiff and plaintiff certainly would not suffer hardship or prejudice in the event of a transfer to the Central District of California. Therefore, overall convenience to both parties is greater in the Central District than in California. Moreover, if the action is not transferred, MBC will suffer prejudice because plaintiff will have been awarded for its blatant forum shopping. Therefore, this factor strongly favors transfer.

(4) **Convenience of the Witnesses.** The convenience of party and nonparty witnesses is usually the most important consideration in deciding a motion to transfer venue. *Freeman v. Hoffmann-La Roche Inc.*, 2007 U.S. Dist. LEXIS 23132, at *8. Every witness that MBC intends to call is a resident of and works in the Central District: MBC's CEO, Mel Bernie is a resident of the Central District. He is expected to testify regarding the operations of MBC, its products, and its use of the CIRCA trademarks in connection therewith. MBC's Chief Operating Officer, Paul Edmeier, is a resident of the Central District. He is expected to testify about MBC's registration of the CIRCA trademarks, the marketing and promotion of MBC's CIRCA 1900 line of jewelry, and will offer any testimony regarding MBC's financial and/or accounting

---

[13] *See* Bernie Decl. at ¶ 2.

[14] *See* Bernie Decl. at ¶ 8.

8

information, if required.[15]  Further, all of plaintiff's witnesses could potentially reside and/or work in its San Francisco, California location which is only a short flight from the Central District – or even in Los Angeles since plaintiff's services and/or goods are provided outside of its regional office areas.  The potential of calling witnesses who reside in the Southern District of New York does not exist for MBC, as it has no employees there.  Accordingly, the Central District is far more convenient for all potential witnesses on both sides.

(5) **The Court's familiarity with governing law.**  Of course either forum contemplated hereunder is familiar with federal trademark law.  However, plaintiff seeks a declaratory judgment that "plaintiff does not violate any state unfair competition or false advertising laws."[16]  Because it does not specify which state law applies, this factor is neutral. *Ritz v. Shen*, 384 F.Supp.2d at 684.[17]

(6) **Interests of Justice.**  The interest of justice is a separate component of the Court's Section 1404(a) analysis, and may be determinative in a particular case. *Freeman v. Hoffmann-La Roche Inc.*, 2007 U.S. Dist. LEXIS 23132, at *10.  The interests of justice "are based on the totality of the circumstances." *Id.*  Here, the totality of circumstances favor transfer to the Central District because of plaintiff's blatant effort to forum shop in its presumably preferred forum and to avoid being sued under the state laws of California, not to mention its dubious unilateral termination of settlement discussions.  Plaintiff apparently was in the process of "replying" to MBC's various cease and desist letters and working toward settlement of this matter, and then, anticipating that MBC would commence litigation against plaintiff in the Central District if settlement discussions were not fruitful, plaintiff preemptively filed this suit in this district in order to litigate in its presumably preferred forum and to avoid defending

---

[15] *See* Bernie Decl. at ¶ 10.

[16] *See* Complaint at p.13 under the heading "Count Three."

[17] However, please see discussion of Interests of Justice factor, *infra.*

California state law claims. This type of forum shopping cannot, in the interest of justice, be rewarded.

IV.  **CONCLUSION**

For the foregoing reasons, MBC respectfully requests that, pursuant to 28 U.S.C § 1404(a), the Court grant MBC's motion to transfer venue to the Central District of California.

Dated:  January 28, 2008

Respectfully submitted,

ALLYN & FORTUNA LLP
Nicholas Fortuna, Esq. (NF-9191)
Attorneys for Defendant
*MEL BERNIE and COMPANY, INC.*
200 Madison Avenue, 5th Floor
New York, New York  10016
Ph:  (212) 213-8844
Fax:  (212) 213-3318

and

WEISSMANN WOLFF BERGMAN COLEMAN
  GRODIN & EVALL LLP
Marvin Gelfand (Admitted *Pro Hac Vice*)
Attorneys for Defendant
*MEL BERNIE and COMPANY, INC.*
9665 Wilshire Boulevard, 9th Floor
Beverly Hills, California  90212
Ph:  (310) 858-7888
Fax:  (310) 550-7191