UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| CIRCA, INC., | : Civil No. 07-CIV-10265 |
| | : |
| Plaintiff, | : |
| | : |
| MEL BERNIE AND COMPANY, INC., | : |
| | : |
| Defendant. | : |
| | : |

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO TRANSFER VENUE

---

Attorneys for Plaintiff:

Gallo & Darmanian
230 Park Avenue, Suite 863
New York, NY 10169
Attn: Nicholas A. Gallo, Esq. (NG 9864)
(212) 692-0872
(212) 692-0875 (FAX)
NYFED@aol.com

COLLIER & BASIL, P.C.
125 West 31st Street, Suite 19-B
New York, NY 10001
Robert J. Basil, Esq. (RB 3410)
A Director of the Firm
(917) 512-3066
(831) 536-1075 (FAX)
robertjbasil@collierbasil.com

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I.      PRELIMINARY STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      MBC Has Not Met Its Initial Burden to
                Demonstrate That There Should Be a Change
                of Forum to the Central District of California . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      Circa Inc. Did Not Engage in "Forum Shopping"
                As Alleged by MBC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.      Circa Inc.'s Filing Cannot Be Characterized
                As An "Anticipatory Suit" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        D.      MBC Has Failed to Specify Key Witnesses Located
                Outside The Southern District of New York. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        E.      The Dispositive Factors Weigh in Favor of Retaining
                Venue in the Southern District of New York . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

800-Flowers, Inc. v. Intercontinental Florist, Inc.,
    860 F.Supp. 128 (S.D.N.Y.1994) ................................................................... 11

ACE One Stop Group, Inc. v. CD Listening Bar, Inc.,
    326 F.Supp.2d 525 (S.D.N.Y.2004) ................................................................ 14

Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.,
    685 F.Supp. 346 (S.D.N.Y.1988) ................................................................... 18

Apotex Inc. v. Sanofi-Synthelabo,
    386 F.Supp.2d 549 (S.D.N.Y.2005) ............................................................... 10

Cento Group, S.p.A v. OroAmerica, Inc.,
    822 F.Supp. 1058 (S.D.N.Y.1993) ................................................................. 14

Citigroup Inc. v. City Holding Co.,
    97 F.Supp.2d 549 (S.D.N.Y.2000) .................................................................. 9

Constitution Reinsurance Corp. v. Stonewall Insurance Co.,
    872 F.Supp. 1247 (S.D.N.Y.1995) ................................................................. 14

Everest Capital Ltd. v. Everest Funds Management, L.L.C.,
    178 F.Supp.2d 459 (S.D.N.Y.2002) ....................................................... 9, 11, 12

Factors Etc., Inc. v. Pro Arts, Inc.,
    579 F.2d 215 (2nd Cir. 1978),
    rev'd on other grounds, 652 F.2d 278 (2nd Cir. 1981) ............................... 12, 14

Ford Motor Co. v. Ryan,
    182 F.2d 329 (2d Cir.),
    cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950) ..................... 8, 17

Hubbell Inc. v. Pass & Seymour, Inc.,
    883 F.Supp. 955 (S.D.N.Y.1995) ................................................................... 8

Invivo Research, Inc. v. Magnetic Resonance Equipment Corp.,
        119 F.Supp.2d 433 (S.D.N.Y.2000) ............................................. 14

J. Lyons & Co., Ltd. v. Republic of Tea, Inc.,
        892 F.Supp. 486 (S.D.N.Y.1995) ........................................... 10, 11

Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.,
        342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952) ........................... 8

Mendelson v. Fleischmann,
        386 F.Supp. 436 (S.D.N.Y.1973) ............................................. 12

New York v. General Motors Corp.,
        357 F.Supp. 327 (S.D.N.Y.1973) ............................................. 8

Ontel Products, Inc. v. Project Strategies Corp.,
        899 F.Supp. 1144 (S.D.N.Y.1995) ......................................... 11, 12

Orb Factory, Ltd. v. Design Science Toys, Ltd.,
        6 F.Supp.2d 203 (S.D.N.Y.1998) ............................................. 14

Polaroid Corp. v. Polarad Electrics Corp.,
        287 F.2d 492 (2nd Cir. 1961) ................................................. 2

Raytheon Co. v. National Union Fire Insurance Co.,
        306 F.Supp.2d 346 (S.D.N.Y.2004) ........................................... 9

Reliance Insurance Co. v. Six Star, Inc.,
        155 F.Supp.2d 49 (S.D.N.Y.2001) ......................................... 9, 11

Remington Products Corp. v. American Aerovap, Inc.,
        192 F.2d 872 (2d Cir.1951) ................................................. 8

Ritz Hotel v. Shen Manufacturing Co.,
        385 F.Supp.2d 678 (S.D.N.Y.2005) ....................................... 17, 18

Riviera Trading Corp. v. Oakley, Inc.,
        944 F.Supp. 1150 (S.D.N.Y.1996) ........................................... 9

Schnabel v. Ramsey Quantitative Systems, Inc.,
        322 F.Supp.2d 505 (S.D.N.Y. 2004) .................................. 10, 11, 13
        ...................................................................... 15, 16, 17

Smart v. Goord,
        21 F.Supp.2d 309 (S.D.N.Y.1998) ......................................... 15, 17

United States v. Doherty,
  786 F.2d 491 (2d Cir.1986) ........................................................... 12

William Gluckin & Co. v. International Playtex Corp.,
  407  F.2d 177 (2d Cir.1969) ...................................................... 8, 9

Wiwa v. Royal Dutch Petroleum Co.,
  226 F.3d 88 (2d Cir.2000) ........................................................... 10

ZPC 2000, Inc. v. SCA Group, Inc.,
  86 F.Supp.2d 274 (S.D.N.Y.2000) ............................................. 15

## UNPUBLISHED CASES - S.D.N.Y.

Clarendon Nat'l Ins. Co. v. Pascual,
  2000 WL 270862  ......................................................... 12, 16, 17

Deshoulieres, S.A. v. Cuthbertson Importations, Inc.,
  2006 WL 2849818 ......................................................................... 8

Societe Generale v. Florida Health Sciences Center, Inc.,
  2003 WL 22852656 ...................................................................... 18

Sterling Nat'l Bank & Trust Co. v. Cencor, Inc.,
  1992 WL 176588  ........................................................................ 17

Wechsler v. Macke Int'l Trade, Inc.,
  1999 WL 1261251 ....................................................................... 12

## FEDERAL STATUTES AND RULES

15 U.S.C. § 1117 ..................................................................................... 13

Federal Rule of Civil Procedure 11 ............................................................ 6

## MISCELLANEOUS

C. Wright, A. Miller and E. Cooper,
  15 Federal Practice and Procedure 244 ..................................... 8, 12

# I. PRELIMINARY STATEMENT

In late November 2007, Plaintiff, Circa Inc filed this declaratory judgment action. No other action between the parties has been commenced. Circa Inc chose to file this action in November 2007 because it was being harassed by the Defendant's repeated allegations of trademark infringement. These acts of harassment were causing Circa Inc uncertainty about its future business and marketing activities, all of which depend upon the continued use of the Circa name. Indeed, as Circa Inc's use of its own corporate name, domain name, and trade name were being challenged as being illegal, further delay in commencing an action to determine its rights would have been intolerable to Circa Inc.

Circa Inc filed suit in this Southern District of New York because this is where its headquarters are located, where all of its executives are located, where all of the decisions were made that allegedly violated Defendant's legal rights, and where all of the witnesses to those decisions are located (except one who has since moved from New York to London, England). Contrary to the claims of the Defendant, Mel Bernie and Company ("MBC"), this action was not filed here in an attempt to "forum shop" or to evade potential liability under the laws of the State of California.

MBC is a large manufacturing and retailing company that sells various products all over the world. The products of MBC's relevant subsidiary, "1929 Jewelry", are available at many retail locations in New York City and elsewhere outside of California.

Circa Inc has its executive and administrative offices in New York City. No Circa Inc executives are located elsewhere. Circa Inc does have two employees who are located in California. However, neither of these are located in the Central District of California where MBC seeks to send

this case.  More importantly, neither of these California employees is an executive employee, and neither is a potential witness in this matter.  They are simply irrelevant to the issue of venue.

According to the allegations and defenses in the pleadings, the key witnesses in this case are those individuals involved in Circa Inc's choice of the domain name, circajewels.com, and the corporate name "Circa Inc."  There are twenty-one such individuals.  All except one of these twenty-one individuals are located in New York, and some are non-party witnesses.  The single individual who is not located in New York is the aforementioned one located in London, England.

MBC did not file an action in California in response to the Complaint.  Instead, it answered and filed a counterclaim in this Court.  In its counterclaim, MBC joined as Defendants "Roes 1 to 10," individuals thought by MBC to have been involved in the evolution of the Circa Inc name and the decision by Plaintiff to adopt it.  All of these individuals (the twenty-one identified above) are expected to be called to testify by either the Plaintiff or Defendants, after also appearing for depositions.  In addition, Circa Inc's expert witness, who will likely be called to testify by Circa Inc concerning the lack of customer confusion, is located in New York.  He is expected to be surveying customers and potential customers from New York, not other areas.

From the standpoint of MBC's trademark claims, one issue that could decide the matter in favor of Circa Inc will be whether or not there is confusion between MBC's "Circa 1900" and Circa Inc's use of that name, applying the principles of Polaroid Corp. v. Polarad Elecs. Corp., 287 F. 2d 492 at 495 (2nd Cir. 1961).  That type of testimony will no doubt come from the parties' experts and/or actual shoppers, of which perhaps none will come from the Central District of California. No such California persons have been identified by MBC.  Because of Circa Inc's close connections with New York, and its advertising program in the New York Times newspaper, such witnesses will

necessarily include several located in New York.  Therefore, the center of gravity for this litigation

could not be the Central District of California, and venue is proper in this District.

## II.  STATEMENT OF FACTS

The relevant facts necessary to decide this motion are recited in allegations and exhibits to

the Complaint, the Answer and Counterclaim, the Answer to the Counterclaim, the Application for

Change of Venue, and this response, as well as various public documents.  The public documents

include MBC's Application for Cancellation of the "Circa" mark for abandonment before MBC

owned it and the extensive files of the Trademark Office on MBC's Application for Registration of

"Circa 1900," still pending.  There appears to be no material dispute about the nature of the

businesses of Circa Inc and MBC.  MBC is a manufacturer and retailer of inexpensive costume

jewelry. See Counterclaim, ¶ 7.  As amply demonstrated by the pleadings, and even the submissions

by MBC in "support" of this motion, Circa Inc is a purchaser of fine, pre-owned jewelry.  It makes

such purchases primarily from wealthy individuals and estates, then resells the jewelry to a small

group of jewelry merchants.

From the first correspondence from counsel for MBC to Circa Inc in January 2007, which

communicated claims of trademark infringement, Circa Inc has failed to see any possible confusion

between the products of MBC and the services of Circa Inc.  For reasons elaborated hereafter, it has

been the opinion of Circa Inc that MBC is simply looking for a "pay day" to be obtained by

harassment.

There was considerable pre-suit correspondence between the parties over a lengthy period

of time.  In its Memorandum, MBC cites a few pieces of that correspondence, but attaches none of

it to its motion papers or its pleadings.  A review of all the relevant correspondence, some attached

to Plaintiff's Complaint and more submitted with this opposition, will reveal none of the disingenuousness on the part of Circa Inc that MBC claims. Instead, these communications reveal the growing frustration of Circa Inc in its year-long effort to resolve this dispute without resorting to litigation.

As indicated above, Circa Inc engaged MBC in significant pre-suit discussions with respect to settlement. In fact, acceptable future business arrangements between the parties were agreed to in principle by counsel, although without confirmation by the principals. However, MBC's unwavering insistence on a 10% royalty on sales of Circa Inc, which became a condition of MBC to any settlement, was never considered by Circa Inc to be a bone fide offer. Counsel for Plaintiff explained to MBC's counsel why that was true, noting that Circa Inc's purchases from many sellers are of substantial value, but that resale to about 30 jewelry merchants had a mark-up of only 20%. Thus, a 10% royalty (approximately 50% of all of Circa Inc's corporate revenue) was out of the question.

After brief discussions of a modest front-end payment by Circa Inc in exchange for a perpetual license, discussions broke down when, despite the noted information, MBC again insisted upon a 10% royalty on sales. This event only strengthened Circa Inc's view that MBC was only after an unwarranted pay day, and that further discussions were futile. When all hope of settlement evaporated, Circa Inc decided to file an action under the Declaratory Judgment Act to put an end to what it considered to be harassment and to eliminate the uncertainty that the dispute was causing.

MBC's insistence that California is the center of gravity of this dispute is not borne out by the facts of the case, as applied to the issues raised by MBC in its own pleadings. As indicated, the essential facts concerning MBC's business undertakings are not disputed, and testimony about that

subject from the two California witnesses MBC has identified may not even be necessary. Circa Inc recognizes that MBC has used the term "Circa 1900" for many years. An application for registration of that mark has been submitted by MBC to the United States Trademark Office. It is also beyond dispute that, as of this point in time, "Circa 1900," as a registered trademark, does not exist. To the best of Circa Inc's knowledge, MBC has NEVER used the mark "Circa," and MBC has presented no proof that it has. There has been a continuous, disingenuous positioning by MBC of the use of the term "the Circa marks" which has not subsided, even before this Court. See Counterclaim, ¶ 8; Memorandum of Points and Authorities, at 2 (defining "CIRCA trademarks" to include the trademark "CIRCA," which MBC has argued in another forum was abandoned by its prior owner and must therefore be canceled by the United States Patent and Trademark Office). Yet, there is no evidence that MBC has used "CIRCA" alone, but only in conjunction with "Circa 1900," or perhaps with other calendar year designations. It is also beyond dispute that until about December 2006, MBC did not own any rights to the "Circa" mark. See Counterclaim, ¶ 9. It is also beyond dispute that MBC's Application for Cancellation due to abandonment by UKI was not withdrawn until April 2007, some months after MBC threatened Circa Inc with litigation and some months after purportedly purchasing the mark from UKI. If in fact MBC has not since then used the mark "Circa" alone and without the date "1900", there can be no doubt that the mark is still abandoned and "Circa" cannot be honestly included as part of something MBC called the "Circa trademarks."

The facts surrounding the historical ownership of the "Circa" name are also beyond genuine dispute and beyond the need for any supporting California witnesses. As stated above, the Registered Trademark "Circa" was, until recently, owned by UKI Products Limited ("UKI") of the United Kingdom. Counterclaim ¶ 9. MBC brought an Application for Cancellation of that mark

based on abandonment by UKI.  In its Application for Registration of "Circa 1900," MBC  argued that its own use of "Circa 1900" did not constitute use of the mark "Circa."  Thus, this Court will be able to determine from MBC's own public filings whether MBC was using the mark "Circa" before Circa Inc began using the term (it was not).  This Court will also be able to determine, without testimony from California witnesses, that the mark "Circa" was, in fact, abandoned by UKI and is still abandoned as unused by MBC.  See Exhibit G to Complaint.

It is also a matter of public record, needing no testimony at all, that in about December 2006, MBC purchased from UKI any rights UKI might have had to the "Circa" mark.  Counterclaim, ¶ 9. The public record also reveals that MBC withdrew its Application for Cancellation only in the spring of 2007, after MBC purchased whatever rights UKI retained.  It is also beyond dispute that before the spring of 2007 (in January 2007), MBC first wrote to Circa Inc, alleging infringement of the "Circa 1900" common law mark.  See Exhibit B to Certification of Nicholas A. Gallo.

On the other hand, Circa Inc chose and began to use its new name in December of 2005. Therefore, no California witness need testify about whether Circa Inc's use preceded MBC's transactions with UKI related to the CIRCA mark.  The business of Circa Inc, as described in other pleadings and supported by the exhibits thereto, is vastly different from that of MBC.  To the extent necessary, witnesses with knowledge of that business will be from New York.

In any event, it was and is inconceivable to Circa Inc that there could be any confusion in the marketplace.  At first blush, it might be considered that the time frame of the pre-suit exchanges of letters/E-mails and telephone discussions was unduly lengthy.  However, Circa Inc, needed to obtain and consider details of UKI's use, or lack of use, of the "Circa" mark, obtain and consider the arguments used by MBC to support its Application for Cancellation of the "Circa" mark,

investigate MBC's use, or disuse of the "Circa" mark since its purchase, obtain and consider the very lengthy arguments and exchanges with the Trademark Office of MBC regarding its Application of "Circa 1900," before deciding on how to proceed. <u>Cf</u>. Federal Rule of Civil Procedure 11. It was only after obtaining and reviewing the various voluminous public documents underlying MBC's activities and revealing the contradictory positions taken by MBC that Circa Inc became frustrated and concluded that MBC was only after an illegitimate payday from Circa Inc. Several points were identified as a result of this review that required legal research. And, of course, Circa Inc had to consider the alternatives to litigation, such as licensing or changing its corporate name. It was not until all of these activities pointed to the necessity of filing suit that Circa Inc availed itself of its rights under the Declaratory Judgment Act.

As illustrated above, the Southern District was an appropriate venue for Plaintiff's action; there was no forum shopping or disingenuousness involved in the conduct of Circa Inc. In any event, the overwhelming preponderance of the evidence and witnesses involved in this matter will be from New York, and, thus, the balance of convenience points solely to this District.

### III.  LEGAL ARGUMENT

A.    **MBC Has Not Met Its Initial Burden to Demonstrate That There Should Be A Change of Forum to the Central District of California.**

There can be no doubt that the burden is on the defendant when it is the moving party, under § 1404(a), to establish that a plaintiff's statutory right to select a forum should be abrogated.  See Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); New York v. General Motors Corp., 357 F.Supp. 327, 328 (S.D.N.Y.1973).  C. Wright, A. Miller and E. Cooper, 15 Federal Practice and Procedure 244 (1976) (hereinafter cited as Federal Practice and Procedure).  When determining the extent of the defendant's burden, "[T]he core determination under § 1404(a) is the center of gravity of the litigation . . . ."  Deshoulieres, S.A. v. Cuthbertson Imps., Inc., No. 06 Civ. 5163, 2006 WL 2849818, at *2 (S.D.N.Y. Oct. 3, 2006) (quoting Hubbell Inc. v. Pass & Seymour, Inc., 883 F.Supp. 955, 962 (S.D.N.Y.1995)).

In this application, MBC has failed to demonstrate that the Central District of California is the "center of gravity" of this litigation.  Indeed, such a demonstration is impossible on these facts. Therefore, the motion should be denied.

In addition, the rule in the Second Circuit is that the first filed suit cannot be denied priority, " 'absent the showing of balance of convenience in favor of the second action' . . . or unless there are special circumstances which justify giving priority to the second."  William Gluckin & Co. v. International Playtex Corp., 407 F.2d 177, 178 (2d Cir. 1969), Quoting Remington Products Corp. v. American Aerovap, Inc., 192 F.2d 872 (2d Cir. 1951).  The Supreme Court has articulated the test to be "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation . . . ."  Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952).  Thus, the plaintiff's

selection of this forum in this first filed suit enjoys strong deference. However, that deference may be reduced (but not eliminated) if "special circumstances" are present. "Special circumstances" are present when the first suit was filed as a result of forum shopping or when the first suit is found to be an "anticipatory filing." See, e.g., William Gluckin & Co. v. International Playtex Corp., 407 F.2d 177, 178 (2d Cir.1969); Raytheon Co. v. National Union Fire Ins. Co., 306 F.Supp.2d 346, 352 (S.D.N.Y.2004); Reliance Ins. Co. v. Six Star, Inc., 155 F.Supp.2d 49, 54 (S.D.N.Y.2001); Citigroup Inc. v. City Holding Co., 97 F.Supp.2d 549, 556 (S.D.N.Y.2000). As explained infra, there are no "special circumstances" present in this case, as there was no "forum shopping" and no "anticipatory filing" by Circa Inc.

**B.    Circa Inc Did Not Engage In "Forum Shopping" As Alleged By MBC.**

MBC relies heavily upon its charge that Circa Inc engaged in "blatant" forum shopping by filing suit in this judicial district. See, e.g., MBC's "Memorandum of Points and Authorities," at 9; Counterclaim ¶ 6. However, the selection of this judicial district by Circa Inc cannot be considered "forum shopping" under Second Circuit law. In this Circuit, "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." Riviera Trading Corp. v. Oakley, Inc., 944 F.Supp. 1150, 1158 (S.D.N.Y.1996). In this case, Circa Inc filed suit in its home district where all of the decisions and actions that allegedly infringed upon MBC's rights occurred. This falls well outside the Second Circuit definition of "forum shopping."

> "'Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice.' " Everest Capital Ltd. v. Everest Funds Mgmt., 178 F.Supp.2d [459,] 470 [S.D.N.Y.2002] (quoting Riviera Trading Corp. v. Oakley, Inc., 944 F.Supp. 1150, 1158 (S.D.N.Y.1996)). A party who appropriately files a declaratory judgment action in the forum most convenient to him to resolve a ripe

legal dispute is not engaged in forum shopping.    See, e.g., J. Lyons & Co. v.
Republic of Tea, Inc., 892 F.Supp. at 491.

Schnabel v. Ramsey Quantitative Systems, Inc. 322 F.Supp.2d 505, 513-14 (S.D.N.Y. 2004). See
also Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 101 (2d Cir.2000) ("While any plaintiff's
selection of a forum is entitled to deference, that deference increases as the plaintiff's ties to the
forum increase."). Thus, Circa Inc's selection of the judicial district where it is located and where
all of the allegedly wrongful decisions were made cannot be declared "forum shopping" under
Second Circuit law.

   **C.    Circa Inc's Filing Cannot Be Characterized As An "Anticipatory Suit."**

       Any charge of "anticipatory suit" against Circa Inc cannot be sustained.  This case was filed

as a declaratory judgment action because of the uncertainty caused by communications from MBC

regarding alleged infringements.  This was a patently proper use of the Declaratory Judgment Act.

Indeed, this Court has explained that the purpose of the Declaratory Judgment Act is to relieve a

party from this type of uncertainty, and to:

>        allow a plaintiff not certain of his rights to avoid accrual of avoidable damages and
>        to afford him an early adjudication without waiting until his adversary should see fit
>        to begin suit...."    Gianni Sport Ltd. v. Metallica, No. 00 Civ. 0937, 2000 WL
>        1773511 at *4 (S.D.N.Y. Dec. 4, 2000); see also Great Amer. Ins. Co. v. Houston
>        General Ins. Co., 735 F.Supp. 581, 585 (S.D.N.Y.1990).

Apotex Inc. v. Sanofi-Synthelabo, 386 F.Supp.2d 549, 551 (S.D.N.Y. 2005).  This is exactly what

Circa Inc seeks here.

       Further, while there is no question that MBC threatened litigation through its various

communications, those threats were insufficient as a matter of law to form the basis for a finding of

an "anticipatory suit" by Circa Inc.  This Court will not characterize a suit as anticipatory where it

is filed in response to a notice that does not explicitly "inform[ ] a defendant of the intention to file

suit, a filing date, and/or a specific forum for the filing of the suit ...." J. Lyons & Co., Ltd. v. Republic of Tea, Inc., 892 F.Supp. 486, 491 (S.D.N.Y.1995).  None of the communications from MBC to Circa Inc satisfy these basic requirements, as there was never a definite time set for filing. See e.g., Exhibit B to Certification of Nicholas A. Gallo.

In addition, MBC's argument that Circa Inc's first-filed (indeed, only-filed) action was somehow less legitimate because it was a declaratory judgment complaint is contradicted by many decisions in this District.  As this Court has held:

> However, the first filed rule "has been applied in actions **regardless of whether a declaratory judgment was sought in the initial action**.  Accordingly, the fact that [a party] sought declaratory judgment is not dispositive of the issue . . .  A party's reasonable apprehension of a legal controversy may be sufficient to satisfy the requirements of a justiciable controversy without rising to the level of a direct threat of imminent litigation.  Were this not the case, each time a party sought declaratory judg[ ]ment in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail under the anticipatory filing exception."  800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128, 132 (S.D.N.Y.1994) (citations omitted); see, e.g., Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C., 178 F.Supp.2d 459, 469-70 (S.D.N.Y.2002); Reliance Ins. Co. v. Six Star, Inc., 155 F.Supp.2d 49, 54-55 (S.D.N.Y.2001); see also, e.g., Ontel Prods., Inc. v. Project Strategies Corp., 899 F.Supp. 1144, 1150-52 (S.D.N.Y.1995).

Schnabel v. Ramsey Quantitative Systems, Inc., 322 F.Supp.2d 505, 513 (S.D.N.Y.,2004) (emphasis added).  Therefore, this Court should be wary of creating precedent under which a party threatened by litigation cannot sue initially because there is no case or controversy, and then, as soon as one arises, that party cannot sue because the suit would be held to be an anticipatory filing.  This Court already is on record as against creating such a scenario:

> The fact that an action is one seeking a declaratory judgment does not, however, necessarily mean that it is an improper anticipatory filing.  See [Aboveer, Inc. v. Recording Indust. Ass'n of America, Inc.], 166 F.Supp.2d [655] at 658, noting that plaintiff brought the initial action for the reason the declaratory judgment was created, to " 'enable a party who is challenged, threatened, or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his

11

tormentor and remove the cloud by an authoritative determination of plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability.' " Citing United States v. Doherty, 786 F.2d 491, 498-99 (2d Cir.1986) (quoting Declaratory Judgments 280 (2d ed.1941)).  Here, the parties' correspondence and communications regarding the trademark dispute went on for approximately five months before the Nebraska action was commenced.  Given the nature, tone and duration of this correspondence, Defendants were under a reasonable apprehension that if they continued the activity in issue, they would be sued.  Under these circumstances it was not inappropriate for them to seek a declaratory judgment.  See Abovepeer, 166 F.Supp.2d at 658.  Defendants were not required to wait " 'until [their] adversary should see fit to begin suit' " to take steps to protect their ability to use their name.  See id. (quoting Luckenbach Steamship Co. v. United States, 312 F.2d 545, 548 (2d Cir.1963)); Ontel, 899 F.Supp. at 1151.

Everest Capital Ltd. v. Everest Funds Management, L.L.C.,178 F.Supp.2d 459, 469-70 (S.D.N.Y.2002).  Thus, Circa Inc's challenged pre-filing actions should be reviewed in light of the purposes of the Declaratory Judgment Act, and considering the fact that Circa Inc was justifiably concerned with remaining under threat of suit for an unknown period of time in an unknown jurisdiction.

**D.    MBC Has Failed to Specify Key Witnesses Located Outside the Southern District of New York.**

When a party seeks a transfer on account of the convenience of witnesses under § 1404(a), such as MBC here, it must specify the key witnesses to be called and must make a general statement of what their testimony will cover.  See, e. g., Mendelson v. Fleischmann, 386 F.Supp. 436, 439 (S.D.N.Y.1973); 15 Federal Practice and Procedure 270.

To succeed on a transfer motion, however, the moving party – here, defendant Ramsey – "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d at 218; accord, e.g., Clarendon Nat'l Ins. Co. v. Pascual, 2000 WL 270862 at *6; Wechsler v. Macke Int'l Trade, Inc., 1999 WL 1261251 at *6; Coker v. Bank of Am., 984 F.Supp. at 765; Xpressions Footwear Corp. v. Peters, 885 F.Supp. at 633; Tomchuck v. Union Trust Co., 875 F.Supp. at 244.

Schnabel v. Ramsey Quantitative Systems, Inc., 322 F.Supp.2d 505, 516-17 (S.D.N.Y. 2004).  In

this case, MBC failed to identify any of the "key witnesses" to the allegations in the Complaint, or

in MBC's own counterclaims.  Those allegations are related to the selection and use of the "Circa"

mark by Circa Inc, not any actions by MBC.

For example, MBC alleges that the use of the domain name circajewels.com by Circa Inc

was "designed to confuse the consuming public into believing they are visiting a website associated

with [MBC]."  Counterclaim ¶ 14.  MBC alleges that the adoption of circajewels.com as a domain

name was undertaken by Circa Inc "with the intent and expectation that it would cause confusion

with MBC's trademarks."  Counterclaim ¶ 20.  MBC seeks treble damages, pre-judgment interest,

and attorneys' fees pursuant to 15 U.S.C. § 1117(b), based upon an allegation that Circa Inc

"intentionally used the CIRCA trademark . . . knowing that such mark or designation was prohibited

under 15 U.S.C. § 1116(d)."  Counterclaim ¶ 34.  MBC also seeks punitive damages on various

counts, based upon its allegations of evil intent.  Therefore, the "key witnesses" are those persons

who were involved in the selection and use of the mark by Circa Inc.  All of those witnesses save

one are found within 50 miles of this District, and none are found within 3000 miles of the Central

District of California.  In addition, customers or potential customers surveyed for "confusion"

evidence would be located in New York, because New York (and the New York Times newspaper)

is a focal point of the marketing programs undertaken by Circa Inc.  Therefore, MBC has failed to

satisfy its burden of identifying key witnesses who are located in California.

**E.    The Dispositive Factors Weigh In Favor of
         Retaining Venue in the Southern District of New York.**

In determining whether transfer is warranted "for the convenience of the parties and

witnesses [and] in the interest of justice," courts generally consider several factors, including:  (1)

13

the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.  Invivo Research, Inc. v. Magnetic Resonance Equipment Corp., 119 F.Supp.2d 433 (S.D.N.Y. 2000).  See also Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F.Supp.2d 203 (S.D.N.Y. 1998) (citing Wilshire, 976 F.Supp. at 181); Constitution Reinsurance Corp. v. Stonewall Ins. Co., 872 F.Supp. 1247, 1250 (S.D.N.Y.1995); Cento Group, S.p.A v. OroAmerica, Inc., 822 F.Supp. 1058, 1060 (S.D.N.Y. 1993).  As demonstrated below, those factors favor maintaining venue here.

> (1)   The convenience of witnesses factor favors venue in this District:
>
> "The convenience of party and nonparty witnesses is usually the most important consideration in deciding a motion to transfer venue." ACE One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F.Supp.2d 525, 529 (S.D.N.Y. 2004) (citation omitted).  To succeed on a transfer motion, however, the moving party-here, defendant []"must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover."

Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2nd Cir. 1978), rev'd on other grounds, 652 F.2d 278  (2nd Cir. 1981).  MBC has failed to carry this burden.

MBC has identified only two California witnesses.  One is Paul Edmeier, MBC's chief Operating Officer.  See Declaration of Mel Bernie, ¶ 10.  Mr. Edmeier's knowledge is limited to MBC's business.  He does not purport to know anything about Circa Inc, its operations, or its decision to use the allegedly infringing marks.  Id.  The only other California witness is Mel Bernie.  In his declaration, Mr. Bernie claims knowledge only of MBC's business.  Therefore, MBC has

14

identified no non-party witnesses, and no witness of any type who has knowledge of the allegations of infringing conduct by Circa Inc that form the basis of this dispute.  Therefore, this factor weighs heavily in favor of affirming Circa Inc's choice of this New York forum.

(2)     The convenience of the parties factor favors venue in this District:

The two opposing venues are equally inconvenient for the parties' own witnesses.  All of MBC's party witnesses are located in the Los Angeles area.  All of Circa Inc's party witnesses are located in New York.  However, Circa Inc has identified several more party witnesses than MBC. Therefore, this factor weighs in favor of affirming Circa Inc's choice of this New York forum.

(3)     The locus of operative facts factor favors venue in this District:

"[T]he location of operative events is a 'primary factor' in determining a motion to transfer venue." ZPC 2000, Inc. v. SCA Group, Inc., 86 F.Supp.2d 274, 279 (S.D.N.Y.2000) (quoting Smart v. Goord, 21 F.Supp.2d 309, 316 (S.D.N.Y.1998)).  The operative facts, as identified in MBC's own pleadings, took place in this judicial district.  See supra Section III(D)  Therefore, this factor weighs heavily in favor of affirming Circa Inc's choice of this New York forum.

(4)     The availability of process to compel the attendance
         of unwilling witnesses factor favors venue in this District:

[T]he availability of process to compel attendance of unwilling witnesses, as
discussed already, is mostly irrelevant as it appears that all of Ramsey's witnesses are
its officers and employees.

Schnabel v. Ramsey Quantitative Systems, Inc., 322 F.Supp.2d 505, 518 (S.D.N.Y.2004).  Only Circa Inc has identified non-party witnesses who have no obligation to appear in the absence of a valid subpoena.  All such witnesses (except for one in England) are located New York.  None are subject to process in California.  Therefore, this factor weighs heavily in favor of affirming Circa Inc's choice of this New York forum.

(5)    The location of relevant documents and the relative ease of
<u>access to sources of proof factor favors venue in this District</u>:

As indicated, the significant documents and sources of proof regarding the claims in this case are those documents and sources related to Circa Inc's decision to use the term "Circa." Those sources are found within this judicial district, except for the single witness who resides in London, England. Therefore, this factor weighs heavily in favor of affirming Circa Inc's choice of this New York forum.

(6)    <u>The relative means of the parties factor is neutral</u>:

This factor is neutral, as there is no relevant financial information before the Court.

(7)    <u>The forum court's familiarity with the governing law factor is neutral</u>:

The primary claims in this case are asserted under federal law. Therefore, there is no question of this Court's familiarity with that law. It is unclear what state law claims will also be relevant, if any. MBC has pleaded various "tag-along" causes of action under California law. Whether these claims will be part of this case will depend upon New York's choice of law principles, with which this Court is intimately familiar.

> As to the seventh factor, the governing law, it is not clear at this point whether New York or Kentucky law will apply; nevertheless, there is no doubt that this Court is qualified to apply New York's choice of law rules and either state's substantive law to Schnabel's claims. <u>See, e.g.</u>, <u>Clarendon Nat'l Ins. Co. v. Pascual</u>, 2000 WL 270862 at *5; <u>Coker v. Bank of Am.</u>, 984 F.Supp. at 766 ( & cases cited therein); <u>S-Fer Int'l, Inc. v. Paladion Partners, Ltd.</u>, 906 F.Supp. at 215-16 ("[E]ven if California law governs this dispute, the legal issues involve relatively unexceptional questions of contract and fraud. If New York's choice of law rules provide that California law is the appropriate law to apply, . . . then a New York court will be capable of applying it.").

<u>Schnabel v. Ramsey Quantitative Systems, Inc.</u>, 322 F.Supp.2d 505, 519 (S.D.N.Y.2004). Therefore, this Court is well positioned to apply the proper law to this dispute. Further, it is not

clear that California law would provide any significant difference in outcome than federal law would provide in this case.  Therefore, this factor is neutral.

        (8)      The weight accorded the plaintiff's choice
                    of forum factor favors venue in this District:

Circa Inc's choice of this forum is entitled to substantial weight.  This forum was chosen not only because it is where Circa Inc and all of its witnesses are located, but because it is the center of gravity for the proofs that will determine the outcome of this litigation.  MBC has not overcome the presumption of substantial weight given to a plaintiff's choice of forum.  As explained by this Court:

> The deference to plaintiff's choice of forum not only places the burden of proof on the defendant moving for a transfer, but is also a factor to be considered in its own right:
>
> [A] defendant has the burden of making out a strong case for a transfer and . . . plaintiff's privilege, conferred by statute, of choosing the forum he selected is a factor to be considered as against the "convenience" of the witnesses or what might otherwise be the balance of "convenience" as between the parties.
>
> Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); accord, e.g., Clarendon Nat'l Ins. Co. v. Pascual, 2000 WL 270862 at *4-5; Sterling Nat'l Bank & Trust Co. v. Cencor, Inc., 91 Civ. 8264, 1992 WL 176588 at *2 (S.D.N.Y. July 15, 1992); see also, e.g., Smart v. Goord, 21 F.Supp.2d at 315 ("A court must give significant consideration to a plaintiff's choice of venue, not disturbing it unless other factors weigh strongly in favor of transfer."); Coker v. Bank of Am., 984 F.Supp. at 766 ("A plaintiff's choice of forum is generally given substantial weight.") ( & cases cited therein).

Schnabel v. Ramsey Quantitative Systems, Inc., 322 F.Supp.2d 505, 518-19 (S.D.N.Y. 2004).  MBC attempts to dislodge this strong presumption by resorting to Ritz Hotel v. Shen Manufacturing Co., 384 F.Supp.2d 678 (S.D.N.Y. 2005).  MBC claims that Ritz Hotel stands for the proposition that a plaintiff's choice of forum is entitled to "less deference" in a declaratory judgment action.  Memorandum of Points and Authorities, at 7.  However, this misstates the holding in Ritz Hotel.

Less weight is given only when the declaratory judgment action is brought outside a plaintiff's home forum:

> While a plaintiff's choice of forum is generally entitled to substantial weight, that choice is accorded less deference when, as here, a plaintiff brings suit outside its home forum, Alexander & Alexander, Inc. v. Donald F. Muldoon & Co., 685 F.Supp. 346, 349 (S.D.N.Y.1988), **and** the action is one for a declaratory judgment, an action in which plaintiff's "posture before the court is more akin to a defendant than an ordinary plaintiff seeking relief," Societe Generale, 2003 WL 22852656, at *7.

Ritz Hotel, 385 F.Supp.2d at 683-84 (emphasis added).  Thus, Circa Inc's choice of its **home forum** should be afforded no less deference in this Declaratory Judgment action than it would be accorded in any other type of action.  Therefore, this factor weighs heavily in favor of affirming Circa Inc's choice of this New York forum.

> (9)    The trial efficiency and the interest of justice factors, based
>        on the totality of the circumstances, favors venue in this District:

A trial in this case would require testimony of several witnesses, most of whom are located in New York.  Therefore, any trial would be more efficiently conducted in this District.  Circa Inc expects to call at least ten fact witnesses who are located in the New York area, plus at least one expert witness who is also located in New York.  In addition, the "confusion" or "lack-of-confusion" witnesses will be from New York.  There is no particular reason evident for calling to the stand a "confusion" or "lack of confusion" witness who may reside in the Central District of California, and no such witnesses have been identified by either party.

In addition, MBC has not even started a case in California.  It is not fair to Circa Inc to delay this case so that the California case can commence.  MBC's claims may be weak, as there is no evidence of confusion, but the disruption to Circa Inc of litigating this matter is considerable, and the accompanying uncertainty affects the business decisions of Circa Inc.  Circa Inc is entitled to

the speediest procedure that will resolve its Declaratory Judgment Act claims, as well as MBC's

counterclaims.  Accordingly, expeditious resolution of the case is "in the interest of justice" and this

factor weighs heavily in favor of affirming Circa Inc's choice of this New York forum.

## IV. CONCLUSION

In light of the facts and events set forth herein, the choice of forum was appropriate, there was no forum shopping, the exchanges of correspondence were not disingenuous, and the balanced convenience of the parties and other factors favor this New York forum.  MBC's motion to transfer venue should be denied.

Dated: February 13, 2008
        New York, New York

Gallo & Darmanian
230 Park Avenue, Suite 863
New York, NY 10169
Attn: Nicholas A. Gallo, Esq. (NG 9864)
(212) 692-0872
(212) 692-0875 (FAX)
NYFED@aol.com


COLLIER & BASIL, P.C.
125 West 31st Street, Suite 19-B
New York, NY 10001
(917) 512-3066
(831) 536-1075 (FAX)
robertjbasil@collierbasil.com


_____/s_____
Robert J. Basil, Esq. (RB 3410)
A Director of the Firm

20